UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JASON L. SHADLE,<br><br>　　　　Defendant. | Case No. 14-cr-40055-JPG |

### MEMORANDUM AND ORDER

This matter comes before the Court on defendant Jason L. Shadle's *pro se* motion for a sentence reduction for "extraordinary and compelling reasons" pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Doc. 50). The Government has responded (Doc. 55). Shadle has replied to that response (Doc. 59).

**I.   Compassionate Release**

The First Step Act expanded the sentence reduction provisions[1] of § 3582(c)(1)(A) by opening the door for a defendant to move for a reduction rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
> 　　(1) in any case—
> 　　　　(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

---

[1] The reduction provisions are often referred to as "compassionate release" because historically the grounds for reduction have included the defendant's health and/or age as "extraordinary and compelling reasons" for immediate release. Release was called "compassionate" because it was viewed as showing sympathy for an ailing or aged defendant.

>>motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>(i) extraordinary and compelling reasons warrant such a reduction. . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

In exhausting administrative remedies, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for a sentence reduction. *United States v. Williams*, 62 F.4th 391, 393 (7th Cir. 2023); *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Otherwise, the warden is not equipped to properly consider the defendant's request. Additionally, the Court should give substantial weight to the BOP's analysis, if there is any, regarding "extraordinary and compelling reasons" in any particular case. *Gunn*, 980 F.3d 1180.

The final clause of § 3582(c)(1)(A) requires the Court to consider whether a sentence reduction would be consistent with U.S.S.G. § 1B1.13 (2023) (effective Nov. 1, 2023), the policy statement applicable to motions filed by the BOP Director or the defendant. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(a)(2) (2023).[2] The policy statement further defines "extraordinary and compelling reasons" to include, alone or in combination, as relevant for this case:

>**(1) Medical Circumstances of the Defendant.**—
>>**(A)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ

---

[2] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

disease, and advanced dementia.
**(B)** The defendant is—
- **(i)** suffering from a serious physical or medical condition,
- **(ii)** suffering from a serious functional or cognitive impairment, or
- **(iii)** experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
**(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
**(D)** The defendant presents the following circumstances—
- **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
- **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
- **(iii)** such risk cannot be adequately mitigated in a timely manner.

\* \* \*

**(3) Family Circumstances of the Defendant.**—
**(A)** The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
**(B)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
**(C)** The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
**(D)** The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

\* \* \*

**(5) Other Reasons.**—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

3

> **(6) Unusually Long Sentence.**—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b) (2023).

The guideline further states that non-retroactive changes in the law may not be considered in determining whether an extraordinary and compelling reason exists, but they may be considered in determining the extent of a reduction where other extraordinary and compelling reasons exist. U.S.S.G. § 1B1.13(c) (2023). The guideline also provides that the rehabilitation of the defendant cannot, by itself, be an extraordinary and compelling reason, but it may be considered in connection with other reasons in determining whether and to what extent the Court should grant a reduction. U.S.S.G. § 1B1.13(d) (2023).

Thus, for a defendant to be eligible for a § 3582(c)(1)(A) sentence reduction, he must have exhausted his administrative remedies,[3] and the Court must find that (1) extraordinary and compelling reasons for a reduction exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant a reduction. 18 U.S.C. § 3582(c)(1)(A). The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *Gunn*, 980 F.3d at 1180. The Court must ensure that any reduction complies with U.S.S.G. § 1B1.13 (2023).

## II.     Analysis

In October 2014, Shadle pleaded guilty to one count of conspiracy to manufacture 50 grams

---

[3] The exhaustion requirement is not jurisdictional and may be waived by the Government. *Gunn*, 980 F.3d at 1179.

or more of a mixture and substance containing methamphetamine, two counts of possession of materials used to manufacture methamphetamine, and one count of possession of pseudoephedrine to manufacture methamphetamine. At the defendant's sentencing in February 2015, the Court found that Shadle was a career offender based on two prior convictions for a controlled substance offense (attempt to manufacture a controlled substance and possession of methamphetamine manufacturing chemicals). *See* U.S.S.G. §4B1.1.[4] His career offender offense level was determined to be 34 because of the statutory maximum sentence of 40 years under 21 U.S.C. § 841(b)(1)(B). The Court sentenced Shadle to serve 216 months in prison on the conspiracy count and 120 months on the other counts, all to run concurrently. Shadle did not appeal his sentence. Shadle's projected release date is October 1, 2029. *See* BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (visited June 2, 2025).

     Now, Shadle asks the Court to reduce his sentence to time served. He states that his 16-year-old son is paralyzed from the waist down and is confined to a wheelchair after a relatively recent motorcycle accident, and his primary caregiver, his son's mother, is overwhelmed by her son's needs and other responsibilities. She recently had a "nervous breakdown" and desperately needs his help with their son. Shadle also points to his own medical condition, which he states requires some kind of surgery related to his heart. He also argues that caselaw has changed to disqualify one of his prior convictions from serving as a basis for career offender status, and that as a result there is a gross disparity between his sentence and what his sentence would have been had he been convicted today. He believes his current sentence is an "unusually long sentence" ("ULS") and that the 10 years he has already served are greater than he would have been sentenced to today and are enough. Finally, he argues that his rehabilitation efforts, education, employment and good

---

[4] Unless otherwise noted, all references to the U.S.S.G. are to the 2014 version.

5

behavior in prison—he has received only one minor, nonviolent disciplinary infraction and has been sober for 12 years—weigh in favor of a sentence reduction. He notes that he will have strong support from family and friends if he is released now. He concludes that he is a changed person from the one who committed his offenses and no longer poses a danger to the community.

In response, the Government argues that Shadle has not shown he satisfies the criteria for a reduction based on a ULS, specifically, he has not shown his sentence is unusually longer than his guideline range at sentencing. It further argues that a nonretroactive change in the law, including a judicial decision, that could render one of Shadle's prior convictions unable to support career offender status is not sufficient to amount to extraordinary and compelling reasons for compassionate release. And the case on which Shadle relies, *United States v. Tate*, 822 F.3d 370, 375 (7th Cir. 2016), does not even apply to him, so Shadle would still be a career offender were he sentenced today.

The Government also challenges the Sentencing Commission's authority to promulgate U.S.S.G. § 1B1.13(b)(6) (2023) as an extraordinary and compelling reason based on a change in the law that is not retroactive, either by express Congressional instruction or by ordinary nonretroactivity principles. It notes that Seventh Circuit caselaw clearly establishes that changes in the law, whether statutory or judicial, cannot constitute extraordinary and compelling reasons for compassionate release. *United States v. King*, 40 F.4th 594 (7th Cir. 2022); *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021).

As for Shadle's medical condition, the Government argues Shadle's allegations are too vague, and he abandoned his argument by not presenting it in the body of his motion. Further, Shadle's medical records reflect no impending need for surgery as well as monitoring of his condition by the BOP in the meantime. As for Shadle's family circumstances, the Government notes that Shadle has not established that his son's mother is incapacitated, only that she is

6

overwhelmed, and suggests that, based on his past conduct, Shadle's presence might not be helpful to his son's mother.  Finally, the Government argues that Shadle is still a danger to the community and that the § 3553(a) factors weigh against his release.  It points to his lengthy criminal history and his two disciplinary violations in prison, one of which was for fighting.  And it notes that rehabilitation alone cannot amount to an extraordinary and compelling reason for release.

    A.    <u>Exhaustion of Administrative Remedies</u>

The Government has not invoked exhaustion of remedies as a defense, so has waived that argument.  Indeed, it appears that Shadle asked the warden of his institution for compassionate release more than 30 days before he filed his motion.

    B.    <u>Extraordinary and Compelling Reasons</u>

With one possible exception, Shadle has not established any extraordinary and compelling reason for compassionate release.

    1.    <u>Personal Medical Circumstances</u>

Shadle claims his personal medical circumstances are an extraordinary and compelling reason for release.  It is true that his medical records show some kind of health problem, but it is being monitored by doctors at the BOP.  He does not describe, and his records do not reflect, a terminal illness or an end-of-life expectancy, a condition that substantially diminishes his ability to provide self-care in prison and from which he is not expected to recover, any condition that requires special medical care that is not being provided, and any ongoing outbreak of infectious disease or public health emergency.  Shadle satisfies none of the options for his own health being considered an extraordinary and compelling reason for release.

    2.    <u>Unusually Long Sentence ("ULS")</u>

Shadle argues that caselaw has changed such that one of his prior convictions could not support career offender status, rendering his current sentence a ULS compared to the sentence he

7

would have received if convicted today. Under the plain language of U.S.S.G. § 1B1.13(b)(6), a ULS must result from a change in the law that produces a gross disparity between the Court's sentence of the defendant and the sentence the Court would impose today after considering all relevant circumstances. The Court need not address the Sentencing Commission's authority to promulgate such a regulation because, even if it was authorized, Shadle would not satisfy the requirements.

There was simply no change in the law that would have resulted in a different sentence had Shadle been sentenced today, much less a change that produced a "gross disparity" in those sentences. To be a career offender at both times, a defendant had to have had two prior felony convictions of a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). The Sentencing Guidelines define a "controlled substance offense" to include only offenses prohibiting the "manufacture, import, export, distribution, or dispensing of a controlled substance," or "the possession of a controlled substance." U.S.S.G. § 4B1.2(b). The Court identified Shadle's prior conviction for attempt to manufacture a controlled substance in violation of 720 ILCS 570/401(d) (2000) (manufacture of methamphetamine) and 720 ILCS 5/8-4(a) (2000) (attempt) as a qualifying prior conviction. The Information leading to that conviction reflects that the substantial step he took toward that attempt was to obtain anhydrous ammonia for manufacturing methamphetamine without authority.

Shadle points to *United States v. Tate*, 822 F.3d 370 (7th Cir. 2016), to argue that his conviction is not a "controlled substance offense." But Shadle is confused. *Tate* held that another Illinois crime, attempted procurement of anhydrous ammonia with intent that it be used to manufacture methamphetamine in violation of 720 ILCS 656/25(a)(1), was not a controlled substance offense for career offender purposes. This was because that crime did not prohibit the "manufacture, import, export, distribution, or dispensing of a controlled substance," or "the

8

possession of a controlled substance," the two ways a crime can qualify as a "controlled substance offense under U.S.S.G. § 4B1.2(b). *Id.* at 375. Nor was it for possession of a listed chemical to manufacture a controlled substance, a crime the Sentencing Guidelines define as a "controlled substance offense," U.S.S.G. § 4B1.2 app. n.1. *Id.* at 376; *United States v. Dyer*, 464 F.3d 741, 744 (7th Cir. 2006). But even though Shadle's offense involved the fact that he procured anhydrous ammonia, he was not convicted of violating 720 ILCS 656/25(a)(1), the crime in *Tate*, so *Tate* does not apply to him.

Regardless of *Tate*, Shadle's prior crime of attempt to manufacture a controlled substance in violation of 720 ILCS 570/401(d) (2000) qualified as a "controlled substance offense" at his sentencing and continues to qualify under current law. *See* U.S.S.G. § 4B1.2(b) (2014) and U.S.S.G. § 4B1.2(b)(1) (2024). It was an attempt to commit a crime punishable by more than a year in prison and prohibiting the manufacture of methamphetamine. In sum, no change in the law produced a gross disparity between the sentence the Court gave him and the sentence it would give him today considering his circumstances.

### 3. Family Circumstances

Shadle also relies on the difficulties his quadriplegic son's mother has caring for him along with her other children. But difficulty does not constitute the sort of extraordinary and compelling reason envisioned by U.S.S.G. § 1B1.13(b)(3) (2023) as warranting compassionate release. It is death or incapacitation that constitutes an extraordinary and compelling reason, and the mother of Shadle's son is neither dead nor incapacitated. Shadle has not established that his family circumstances constitute an extraordinary and compelling reason under U.S.S.G. § 1B1.13(b)(3)(A) (2024).

### 4. Other Reasons

However, the Court would be remiss not to look at these family circumstances as a potential

"Other Reason" to find extraordinary and compelling reasons for release under U.S.S.G. § 1B1.13(b)(3)(A) (2024).  It further believes it would be beneficial to its full consideration of this as a potential extraordinary and compelling reason and to its weighing of the § 3553(a) factors against such a reason to hold an evidentiary hearing.  A hearing would give the parties the opportunity to present evidence on whether Shadle would be helpful or harmful to the care of his son and whether the § 3553(a) factors would weigh against his release now.

### III.     Conclusion

For the foregoing reasons, the Court rejects all grounds Shadle raises as "extraordinary and compelling" reasons for compassionate release except for "Other Reasons" related to his family circumstances.  Accordingly, the Court **RESERVES RULING** on Shadle's motion for compassionate release based on "Other Reasons" pending an evidentiary hearing, which will be set by separate order.

**IT IS SO ORDERED.**
**DATED:  June 11, 2025**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
